James **SIMMONS**, Appellant–Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 49A02–0103–CR–000136.

Court of Appeals of Indiana.

Jan. 15, 2002.

Michael E. Caudill, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

James Simmons was convicted by a jury of murder and the trial court sentenced him to the Indiana Department of Correction for sixty-five years. Simmons now appeals his conviction. We affirm.

*Issues*

Simmons raises the following consolidated and restated issues for our review:

1. Whether the trial court properly admitted into evidence hearsay testimony from witnesses Elijah Bowman and Officer Powell;

2. Whether the trial court properly denied Simmons' motion for a mistrial.

*Facts and Procedural History*

The facts reveal that Simmons and Valencia Blair, both semi-truck drivers, met while driving the same route and soon afterward were engaged to be married. Blair ended the relationship in the early part of 2000. After the breakup, Blair became concerned for her safety and related to others that Simmons had threatened her. On February 14, 2000, Blair informed the police that Simmons had threatened her with a gun. On March 2, 2000, Blair was discovered dead in the cab of her semi-truck that was parked at the Flying J Truck Stop located on the south side of Indianapolis, Indiana. Blair had been shot multiple times.

On March 13, 2000, the State charged Simmons with murder, a felony, and carrying a handgun without a license, a Class A misdemeanor. The State later dropped the handgun charge. On January 2, 2001, Simmons filed a motion in limine with the trial court to prohibit the State and any witnesses from mentioning or testifying that Blair had made the statement that she was afraid of Simmons. The State sought to admit the declarations made by Blair to two witnesses, Elijah Bowman and Officer Powell, that she was afraid of Simmons and that Simmons had threatened her with a gun. Bowman was a confidant and former husband of Blair. Officer Powell took the police report on February 14, 2000, where Blair alleged that Simmons had threatened her with a handgun.

On January 4, 2001, the trial court held a hearing on Simmons' motion in limine. The trial court concluded that Bowman could testify that Blair feared Simmons and that her intent was to end her relationship with Simmons, to call off the wedding. However, the court ruled that the same evidence was not admissible to prove Simmons' prior bad act of threatening Blair with a handgun. With regard to Officer Powell, the trial court determined that the police officer could testify that on February 14, 2000, he responded to a 911 call made by Blair. The court further determined that Officer Powell could also testify that Simmons, while in an excited state, claimed that Simmons had threatened her with a gun. In addition, the trial court ruled that Simmons' "motion in limine as to any descriptions of prior bad acts; that is pulling guns and that sort of thing, is granted." R. 40.

The jury convicted Simmons as charged and the trial court sentenced him to the Indiana Department of Correction for sixty-five years. This appeal ensued.

### Discussion and Decision

### I. Admission of Evidence

Simmons first contends that the trial court committed reversible error in admitting the hearsay testimony of Bowman and Officer Powell. We disagree.

### A. Standard of Review

■ Our standard of review in this area is well settled. The admission of evidence is within the sound discretion of the trial court, and the decision whether to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Spires v. State*, 670 N.E.2d 1313, 1315 (Ind.Ct.App.1996). In determining the admissibility of evidence, the reviewing court will only consider the evidence in favor of the trial court's ruling

and unrefuted evidence in the defendant's favor. *Reaves v. State*, 586 N.E.2d 847, 857 (Ind.1992).

### B. Preservation of Error

Initially, we will address the State's contention that Simmons waived for our review the issue of the admission of the hearsay statements of Bowman and Officer Powell because he did not make a contemporaneous objection to the testimony at the time it was offered into evidence. The State argues that Simmons' continuing objection to the admission of the hearsay statements was insufficient for the purpose of preserving the errors for our review.

■ In order to preserve error in the overruling of a pre-trial motion in limine, the appealing party must object to the admission of the evidence at the time it is offered. *Palmer v. State*, 640 N.E.2d 415, 422 (Ind.Ct.App.1994). A motion in limine is not a final ruling on the admissibility of evidence, and a ruling on the motion does not preserve the error for appeal. *Id.* Our supreme court has held that an objection must be specific in order for the issue to be preserved for appellate review. *Willis v. State*, 510 N.E.2d 1354, 1357 (Ind.1987). The record reveals that Simmons made several contemporaneous objections to Officer Powell's testimony when it was admitted at trial. Therefore, Simmons clearly preserved for our review the issue of the admission of Officer Powell's hearsay testimony at trial. The question remains whether Simmons also preserved for our review the issue of the admission of Bowman's hearsay testimony at trial.

The record reveals that immediately prior to the State calling Bowman and Officer Powell to the stand and out of the presence of the jury, Simmons asked the court for a clarification of its earlier ruling on its motion in limine and the admissibility of

the two witnesses' hearsay testimony. Specifically, Simmons stated:

Judge, one of the things we need to do, we know we're getting into that part where we already have had a hearing and you made a ruling on the hearsay.... I think we need a clarification. First of all, we would probably want to show our continuing objection and renew our objection, although I understand that the Court of Appeals doesn't like what they call continuing objections, they say in order to preserve you have to object. But we need to, as to we want to bring those witnesses in now that [sic] are in that sensitive part. We need to kind of have a clarification as to what the State can ask and what we can object to.

R. 248–49. Thereafter, the trial court reiterated and clarified its earlier ruling on Simmons' motion in limine.

We have not expressly disapproved continuing objections. *See Sullivan v. State,* 748 N.E.2d 861, 864 (Ind.Ct.App.2001). The record must demonstrate that the continuing objection or reference to a prior objection fully and clearly advises the trial court of the specific grounds for the objection. *See* Ind. Trial Rule 46. At the motion in limine hearing, Simmons engaged in a heated argument with the State regarding the admission of the witnesses' hearsay statements and asserted several arguments in support of his motion in limine. It is evident from the record that the trial court, during the State's presentation of the evidence, was fully cognizant of Simmons' objections to the hearsay statements. Moreover, Bowman's testimony was extremely brief, lasting only a few minutes. We believe that Simmons' actions were sufficient to fully apprise the trial court of the specific basis for his objection, thus permitting effective appellate review of the trial court's rulings.

Therefore, we reject the State's claim of waiver. We must now examine the merits of Simmons' claims.

### C. Admissibility of Bowman's Hearsay Testimony

Bowman testified at trial that on February 12, 2000, Blair informed him that she had broken off her engagement with Simmons, and that she feared for her safety. Bowman further testified that Blair informed him that she feared Simmons and thought that she would be killed.

Hearsay is a statement made out-of-court that is offered into evidence to prove the truth of the fact or facts asserted in the statement itself. Evid. Rule 801(c); *Craig v. State,* 630 N.E.2d 207, 209 (Ind. 1994). In the present case, the contested portions of Bowman's testimony constitute hearsay. Blair made the statements out-of-court and Bowman repeated the statements at trial, for the purpose of proving the facts asserted in the out-of-court statements, namely that Blair feared Simmons and had ended the relationship. Such hearsay is not admissible at trial unless it fits within some exception to the hearsay rule. *Craig,* 630 N.E.2d 207.

The trial court admitted Bowman's hearsay testimony pursuant to Indiana Evidence Rule 803(3). This evidentiary rule provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness.

* * *

(3) A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it related to the execu-

tion, revocation, identification, or terms of declarant's will.

In addition to the requirement that hearsay fall under an exception to be admissible, our Rules of Evidence also mandate that only relevant evidence is admissible. Evid. R. 402. The Indiana Supreme Court has observed that a "victim's state of mind is relevant where it has been put in issue by the defendant." *Angleton v. State*, 686 N.E.2d 803, 809 (Ind.1997) (citing *Taylor v. State*, 659 N.E.2d 535, 543 (Ind.1995)). It does not appear from the record that Simmons put Blair's state of mind at issue. It was clear throughout the trial that Simmons and Blair had been engaged to be married, and Blair had ended the engagement. Simmons primary defense at trial was that he was somewhere else other then the Flying J Truck Stop located on the south side of Indianapolis, Indiana, when Blair was murdered. Because Blair's fear of Simmons was not relevant to any issue of this case and Simmons did not place her state of mind in issue, we hold that the trial court abused its discretion by allowing Bowman to offer hearsay testimony regarding Simmons' threats and Blair's fear of him.[1]

We disregard error in the admission of evidence unless if affects the substantial rights of a party. Ind. Trial Rule 61; *Fleener v. State*, 656 N.E.2d 1140, 1142 (Ind.1995). An error will be found harmless if its probable impact on the jury, in light of all the evidence in the case, is sufficiently minor that it did not affect the substantial rights of a party. *Id.*

In the present case, Nathan Bruesehoff, a forensic scientist with the Indiana State Police, testified at trial that a cigarette butt and blood retrieved from Blair's semi-truck contained Simmons' DNA. Furthermore, evidence introduced at trial indicated that Blair had been shot with a .380 handgun, and that a .380 unspent shell was recovered from Simmons' semi-truck. Carol Snow, Simmons' girlfriend at the time of the murder, testified that she purchased a .380 handgun for Simmons upon his request. Snow did not know the location of the gun when questioned by the police and the firearm remained missing at trial. Todd Reynolds, supervisor of the Firearms and Tool Mark Identification Unit of the Indiana State Police, testified that the three spent shell casings recovered from Blair's semi-truck and the unspent shell casing recovered from Simmons' semi-truck were cycled in the same handgun. Because Bowman's hearsay testimony had at most, a slight impact on the jury's verdict, we hold that its erroneous admission was harmless.

### D. Officer Powell's Hearsay Testimony

Officer Powell testified at trial that on February 14, 2000, he responded to a 911 call made by Blair whereupon she informed him that Simmons had threatened her with a handgun.

The record reveals that the trial court admitted Officer Powell's hearsay statements under the excited utterance exception to the hearsay rule. The trial court specifically stated that it was not admitting the evidence under Evidence Rule 404(b).

Evidence Rule 803(2) provides that:

The following are not excluded from the hearsay rule, even though the declarant is unavailable as a witness.

\* \* \*

---

1. We note that quite a different question would be presented if Simmons were maintaining that his relationship with Blair was cordial, affectionate etc. In such case her mental state, i.e., fear, on February 12 would have been relevant.

(2) A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. For a hearsay statement to be admitted as an excited utterance under Evidence Rule 803(2), three elements must be shown: (1) a startling event occurs; (2) a statement is made by a declarant while under the stress of excitement caused by the event; and (3) the statement relates to the event. *Jenkins v. State*, 725 N.E.2d 66, 68 (Ind.2000). This is not a mechanical test; it turns on whether the statement was inherently reliable because the witness was under the stress of an event and unlikely to make deliberate falsifications. *Id.* Additionally, while the time period between the startling event and a subsequent statement is, of course, one factor to consider in determining whether the statement was an excited utterance, no precise length of time is required. *Gordon v. State*, 743 N.E.2d 376, 378 (Ind.Ct.App.2001).

Notwithstanding the fact that the hearsay testimony may fit within the excited utterance exception, we find no relevancy for the statements other than to show character and conformity with the charged conduct of murder. "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. Rule 401. The only relevancy of the hearsay testimony that Simmons threatened Blair with a handgun several weeks prior to her murder was to show the "forbidden inference" that he was capable of shooting her to death. This clearly violates the prohibitions of Indiana Evidence Rule 404.

▬ Evidence Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Evidence Rule 404(b) "is designed to prevent the jury from making the 'forbidden inference' that prior wrongful conduct suggests present guilt." *Byers v. State*, 709 N.E.2d 1024, 1026–27 (Ind. 1999).

▬ The standard for assessing the admissibility of 404(b) evidence is: (1) the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) the court must balance the probative value of the evidence against its prejudicial effect pursuant to Evidence Rule 403. *Boone v. State*, 728 N.E.2d 135, 137–38 (Ind.2000); *Hicks v. State*, 690 N.E.2d 215, 221 (Ind.1997). The evidence is inadmissible when the State offers it only to produce the "forbidden inference" that the defendant has engaged in other, uncharged misconduct and the charged conduct was in conformity with the uncharged misconduct. *Crain v. State*, 736 N.E.2d 1223, 1235 (Ind.2000). The trial court has wide latitude in balancing the probative value of the evidence against the possible prejudice of its admission and its ruling will only be reviewed for an abuse of discretion. *Id.*

▬ While the trial court admitted Officer Powell's hearsay testimony under Evidence Rule 803(2), we believe that the only relevancy of the statements was to show Simmons' conformity with the charged conduct of murder, which clearly violates Evidence Rule 404. Accordingly, the trial court erred in admitting the Officer Powell's hearsay testimony.

▬▬ Our analysis does not end with the finding of error in the admission of this

evidence because we must also examine the prejudicial impact of such evidence. An error in the admission of evidence does not justify setting aside a conviction unless the erroneous admission appears inconsistent with substantial justice or affects the substantial rights of the parties. *Udarbe v. State*, 749 N.E.2d 562, 567 (Ind.Ct.App. 2001) (citing Trial Rule 61). For the same reason described in subsection I.B., supra, the erroneous admission of this testimony was harmless.

## II.  Mistrial

Simmons also contends that the trial court erred in denying his motion for a mistral. We disagree.

### A.  Standard of Review

■■■■ The decision to grant or deny a motion for mistrial is entrusted to the sound discretion of the trial court, because the judge is in the best position to evaluate the circumstances of an allegedly prejudicial event, and to assess its impact on the jury. *Kavanaugh v. State*, 695 N.E.2d 629, 632 (Ind.Ct.App.1998). When reviewing a trial court's grant or denial of a mistrial, we look to whether the moving party was placed in a position of grave peril to which he should not have been subjected. *Id.* The gravity of the peril is a function of the probable persuasive effect of the statement or conduct, and not of the degree of the conduct's impropriety. *Id.* A mistrial is an extreme remedy warranted only when no other curative measure, such as an admonishment, will rectify the situation. *See Herrera v. State*, 710 N.E.2d 931, 937 (Ind.Ct.App.1999). Reversal is seldom required when the trial court has

admonished the jury to disregard some statement or conduct. *Kavanaugh*, 695 N.E.2d at 632.

### B.  Simmon's Motion

Simmons argues that the State deliberately inserted an evidentiary harpoon into the trial by eliciting testimony from Officer Powell regarding Blair's perception of Simmons' mental state and that a mistrial was therefore warranted.

■■■■ An evidentiary harpoon occurs when the prosecution places inadmissible evidence before the jury for the deliberate purpose of prejudicing the jury against the defendant and his defense. *Evans v. State*, 643 N.E.2d 877, 879 (Ind.1994).[2] Here, the following colloquy occurred between the State and Officer Powell on direct examination:

> [State]:  Did [Blair], um, what was it that she said about her ex-boyfriend [Simmons], his physical demeanor, did she give you his name or any description of him?
>
> [Officer Powell]:  [Blair] did.  She gave me his name, description, of him.  At one point she told me that he was crazy, that he had no reason, that it wouldn't be beyond him to get on a plane, fly to Knoxville. . . .

R. 350.  We do not believe that the State wielded an evidentiary harpoon.  It is apparent from the record that the State did not purposely elicit the comment on Simmons' mental stability.

We also do not believe that the trial court erred in denying Simmons' motion for a mistrial.  After Officer Powell testified that Blair informed him that Simmons

**2.**  We recognize that in certain instances, a witness may unsolicitedly bring inadmissible evidence before the jury and that such evidence necessarily and irretrievably prejudices the jury against the defendant. *See Baker v. State*, 506 N.E.2d 817 (Ind.1987).  However, in the present case we are only presented with the issue of whether the State elicited the information from the witness, not whether the witness inadvertently or intentionally introduced the inadmissible evidence to the jury.

was crazy, the trial court immediately struck the testimony sua sponte. *See* R. 350. In addition, the trial court instructed the jury that it was to disregard stricken evidence. Final Instruction No. 12 provides that:

> Testimony of witnesses, or other evidence, which has been stricken or to which an objection has been sustained, the remarks of counsel in opening statement, during the trial, or in final argument, or the remarks of the Court should not be considered by you as evidence in this case. Neither should any outside considerations in any way affect your determination of any issue in the case, but such determinations must be based solely on the evidence duly admitted during the course of the trial.

Appellant's Appendix at 125. The trial court's measures cured any prejudice to the jury.

### Conclusion

Based on the foregoing, we hold that the trial court did not commit reversible error in admitting the hearsay statements made by Bowman and Officer Powell. We further hold that the trial court properly denied Simmons' motion for a mistrial.

Affirmed.

KIRSCH, J., and SULLIVAN, J., concur.