## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 27 2019, 10:04 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy E. Stucky
Stucky, Lauer & Young, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Vincent Welty,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | March 27, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2872<br><br>Appeal from the Allen Superior<br>Court<br><br>The Honorable Wendy W. Davis,<br>Judge<br><br>The Honorable David M. Zent,<br>Magistrate<br><br>Trial Court Cause No.<br>02D06-1806-CM-2667 |

**Brown, Judge.**

[1] Vincent Welty appeals his convictions for possession of paraphernalia and carrying a handgun without a license as class A misdemeanors. He raises one issue which we revise and restate as whether the trial court erred in admitting certain evidence. We affirm.

## Facts and Procedural History

[2] On June 6, 2018, police were dispatched to an area in reference to a male walking into the woods armed with a rifle with a scope. The police determined that Welty was the registered owner of a van located at the scene. Fort Wayne Police Officer Geoff Norton responded to the dispatch, looked up Welty in his car computer, and saw alerts that Welty was trained in martial arts, was anti-government, and had made threats to harm or kill police officers. After police gave a loud hail using a P.A. on a squad car, Welty exited the woods, and Officer James Rowland placed him in handcuffs, patted him down, located two knives, and secured them. Officers asked Welty if he had a gun, and he stated that it was a pellet gun and was in the woods because he did not want to exit the woods with it.

[3] Officers retrieved the gun, determined it was an operational airsoft gun that shot metal BBs, and Officer Rowland released Welty from the handcuffs and returned one of the knives to him. Welty placed the knife into a sheath on his belt and walked back towards his van. Welty asked Officer Norton for his other

knife, and Officer Norton told him he was going to place it on the floorboard of Welty's van. This was customary practice for safety reasons. Officer Norton approached the van with Welty, and Welty entered on the driver's side. Officer Norton opened the passenger door to place the knife on the floorboard, and Welty "placed his hand quickly and violently behind a large black bag that was sitting on the passenger seat." Trial Transcript at 22. At that point, Officer Norton's level of concern was "[e]xtremely high." *Id.* Officer Norton stood up to obtain a better look to see if there was "anything . . . that should cause [him] concern." *Id.* at 23. Upon stepping up on the step on the side of the van, Officer Norton saw a part of a holster between the driver's seat and front passenger seat. After realizing that Welty was within reach of a firearm, Officer Norton peeked his head in and verified it was actually a black handgun in the holster. At some point, Officer Norton asked Welty, "Is that a gun?" *Id.* at 12. Welty answered affirmatively. Officer Norton then asked him if he had a permit, and he said no. Officer Rowland, who was standing by the driver's side door, took Welty by the left arm and placed him in handcuffs. At some point, Welty stated that he had a shotgun inside the vehicle as well.

[4]     Officer Norton took the weapon, found there were eighteen rounds in the magazine and a live round in the chamber, and made the weapon safe. After recovering the firearm, Officer Norton searched the vehicle and found a glass smoking device with burnt residue which he recognized to be similar to that used to ingest marijuana and other narcotics.

[5]     On June 7, 2018, the State charged Welty with possession of paraphernalia and carrying a handgun without a license as class A misdemeanors. On October 12, 2018, Welty filed a motion to suppress evidence based on the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

[6]     On October 30, 2018, the court held a hearing on Welty's motion which it later denied. On November 7, 2018, a bench trial was held. On direct examination, Officer Rowland testified that he walked up to the van, realized that Officer Norton was on the passenger side, asked Officer Norton if he had an identification, and saw "Officer Norton kind of, he made a move that to me . . . ." *Id.* at 12. Welty's counsel objected and stated: "You're [sic] honor, I'm just going to object for the record for any testimony pertaining to after the point that Officer Norton opened the door and got into the van and ask that you show a continuing objection relating to that." *Id.* The court stated: "It might be a little premature as he hasn't said anything about Officer Norton opening the door." *Id.* Welty's counsel indicated that she understood.

[7]     During direct examination, Officer Norton testified that he opened the door to place the knife on the floorboard, and Welty's counsel stated: "At this point you're [sic] honor, I'm going to object based upon my previous objection. Anything after he opened the door, that testimony relating to those actions, we would ask our objection to show continuing." *Id.* at 22. The court stated: "We'll not [sic] your objection and show it's overruled at this point." *Id.* The

prosecutor asked Officer Norton some questions regarding the recovered firearm as State's Exhibit 1 and later moved to admit the exhibit into evidence. Welty's counsel asked Officer Norton some preliminary questions including if he was the one who placed the gun into the box, if anybody handled it subsequently, and who tested the firearm. After further discussion, Officer Norton testified that he found a glass smoking device with burnt residue which he recognized to be similar to that used by subjects to ingest marijuana or other narcotics. Officer Norton then indicated that he recognized State's Exhibit 2 as the same glass smoking device that he located inside the van. The prosecutor moved to enter State's Exhibit 2 into evidence, and Welty's counsel stated "I have no objection." *Id.* at 28. After further discussion, the court asked Welty's counsel, "After preliminary questions, do you have any objection to exhibit one . . . ?" *Id.* at 29. Welty's counsel answered: "I do not you're [sic] honor." *Id.* During cross-examination, Officer Norton indicated that he discovered the handgun after opening the door. After the State rested, Welty's counsel moved for judgment on the evidence on the possession of paraphernalia charge, and the court denied the motion and found Welty guilty as charged.

## *Discussion*

[8] The issue is whether the trial court erred in admitting certain evidence. Generally, we review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Roche v. State*, 690 N.E.2d 1115, 1134 (Ind. 1997), *reh'g denied*. We reverse only where the decision is clearly against the

logic and effect of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997), *reh'g denied*. We will not reverse an error in the admission of evidence if the error was harmless. *Turner v. State*, 953 N.E.2d 1039, 1058 (Ind. 2011). Failure to timely object to the erroneous admission of evidence at trial will procedurally foreclose the raising of such error on appeal unless the admission constitutes fundamental error. *Stephenson v. State*, 29 N.E.3d 111, 118 (Ind. 2015). Additionally, we have found the issue waived where a defendant objected to only a portion of the challenged evidence. *See Dickey v. State*, 999 N.E.2d 919, 921 (Ind. Ct. App. 2013); *Hutcherson v. State*, 966 N.E.2d 766, 770 (Ind. Ct. App. 2012), *trans. denied*.

[9] Welty argues that the plain view doctrine does not apply because Officer Norton unilaterally decided to return the seized property by opening the door, the incriminating character of the evidence was not immediately apparent, and Officer Norton had no right to physically enter and inspect the interior of his van. He contends that the State did not identify any exigent circumstances or other justifications for the search of the vehicle after he was taken into custody and that the discovery of the glass smoking pipe was not a valid search incident to arrest. The State argues in part that Welty waived any objection to the admission of the gun and pipe below and has waived the issues he raises on appeal.

[10] We note that Welty's counsel objected during Officer Rowland's testimony to "any testimony pertaining to after the point that Officer Norton opened the

door and got into the van and ask that you show a continuing objection relating to that." Trial Transcript at 12. However, the court stated that it might be premature because Officer Rowland had not said anything about Officer Norton opening the door, and Welty's counsel indicated that she understood. During Officer Norton's testimony, Welty's counsel objected based upon her previous objection and stated: "Anything after he opened the door, that testimony relating to those actions, we would ask our objection to show continuing." *Id.* at 22. The court stated: "We'll not [sic] your objection and show it's overruled at this point." *Id.* We note that Officer Rowland testified, without objection, that: Officer Norton asked Welty, "is that [a] gun," Welty said "it was," Officer Norton asked Welty if he had a permit for it, and Welty said he did not. *Id.* at 12. During cross-examination, Officer Norton indicated that he discovered the handgun after opening the door. Further, when the State offered the gun as State's Exhibit 1, the court asked Welty's counsel if she had any objection to the exhibit, and she answered: "I do not you're [sic] honor." *Id.* at 29. The court then stated: "We'll show one admitted without objection." *Id.* at 29-30. Officer Norton testified that State's Exhibit 2 was the same glass smoking device he located in the van, and when the prosecutor moved to admit the pipe as State's Exhibit 2, Welty's counsel stated, "I have no objection," and the court stated: "We'll show no objection to exhibit two." *Id.* at 28. We conclude that Welty waived any objection to the admission of the gun and pipe and that reversal is not warranted. *See Hayworth v. State*, 904 N.E.2d 684, 693-694 (Ind. Ct. App. 2009) ("By stating 'No objection,' we find that Hayworth

has waived her objection to that evidence. The proper procedure, assuming the trial court granted the continuing objection, would have been for Hayworth to have remained silent when the State introduced those various exhibits."). We also note that Welty does not assert fundamental error or that any error made a fair trial impossible. *See Brown v. State*, 929 N.E.2d 204, 207-208 (Ind. 2010) (holding that "[w]e do not consider that admission of unlawfully seized evidence ipso facto requires reversal," observing that "there is no claim of fabrication of evidence or willful malfeasance on the part of the investigating officers and no contention that the evidence is not what it appears to be," and holding that "[i]n short, the claimed error does not rise to the level of fundamental error," and affirming the defendant's convictions where the defendant made no contention that he did not receive a fair trial other than his assertion that the evidence was the product of an unconstitutional search and seizure), *reh'g denied*.

## Conclusion

For the foregoing reasons, we affirm Welty's convictions.

Bailey, J., and Bradford, J., concur.